**In re Bruce KINGSBURY**

**and Kimberly Kingsbury, Debtors.**

**Bankruptcy No. 89–10265.**

United States Bankruptcy Court,
D. Maine.

Feb. 22, 1991.

Elizabeth A. Hoglund, Hoglund & Associates, Portland, Me., for debtors.

Dennis G. Bezanson, South Portland, Me., Trustee.

## MEMORANDUM OF DECISION

JAMES B. HAINES Jr., Bankruptcy Judge.

This matter came before the court for hearing on February 13, 1991, on debtors' motion for turnover of exempt property. The following facts are undisputed.

## BACKGROUND

On June 30, 1989, the debtors, Bruce and Kimberly Kingsbury, filed a joint Chapter 7 petition in bankruptcy. As required by Bankruptcy Rule 4003(a)[1] and 11 U.S.C. § 522(*l*),[2] they executed Schedule B-4—Property Claimed as Exempt. This court's notice of July 5, 1989, set August 14, 1989,

---

1. "A debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007...."

2. 11 U.S.C. § 522(*l*) provides, *inter alia,* that a debtor shall file a list of property claimed as exempt.

as the date for the Section 341 meeting. An amended notice later issued appointing Dennis Bezanson interim trustee [3] and fixing August 4, 1989 as the date for the Section 341 meeting. In accordance with the provisions of Bankruptcy Rule 4003(b), both notices instructed that "unless extended, objections to debtor(s) claim of exempt property must be filed within 30 days after the Section 341(a) meeting." [4]

Item No. 4 on the debtors' schedule of exempt property listed "earnings" from the sale of milk held by Agri–Mark in the amount of $6,238.69.[5] Employing ditto marks, the debtors indicated the statutory authority for the exemption claim to be identical to that provided for the preceding item on the schedule. The preceding item was also milk "earnings," although purportedly held by a third party, in the amount of $1,500.00. The Kingsburys asserted their exemption entitlement under 14 M.R.S.A. § 4422(1), (3), (7), (15), and (16); and under 14 M.R.S.A. §§ 3127, 3127–A, 3127–B, and 3128.[6]

A section 341 meeting was held on August 4, 1989. Pursuant to the amended notice and Bankruptcy Rule 4003(b), objections to the debtors' claims of exempt property were to be filed by September 5, 1989. Until the pending motion was initiated, no objections, timely or otherwise, were filed.[7]

**3.** 11 U.S.C. § 701. Mr. Bezanson continues to serve as trustee. 11 U.S.C. § 702(d).

**4.** Bankruptcy Rule 4003(b) provides that the trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors or the filing of any amendment to the list unless, within such period, further time is granted by the court.

**5.** Two days prior to the debtors' filing their Chapter 7 petition, the Massachusetts Superior Court issued a restraining order in *Valentine, et al. v. Agri–Mark, Inc. and Kingsbury, et al.*, Civil Action Docket No. 89–1656, which denied the debtors access to funds held by Agri–Mark. They claim they were rightfully entitled to those funds and that they should have received them before the filing. In his response to debtors' motion, the trustee indicates that, upon demand, he recovered from Agri–Mark an initial sum of $8,662.96. Debtors' motion, however,

## DISCUSSION

1. *Testing the Exemption Claim: What is the Standard?*

Section 522(*l*) provides that unless a party-in-interest objects, the property claimed as exempt on debtors' list is exempt. The Kingsburys argue that since the trustee failed to file a timely objection he must pay over to them the $6,238.69 he holds and which they listed as exempt. The trustee answers that he elected not to file an objection to the claimed exemption because it was utterly without statutory basis and that under such circumstances filing a formal objection was unnecessary.

Although the case law is extensively developed elsewhere, the First Circuit has not yet addressed the issue raised by the debtors' motion. Nor has it been addressed by courts in this district. *Cf. In re Langley*, 21 B.R. 772, 773 (Bankr.D.Me.1982) (holding trustee's objections to exemption timely under local rules).

The Kingsburys urge the court to follow cases articulating a "bright line" rule, holding that, if an objection is not filed on time, there can be no examination of the merits of a claimed exemption. *See e.g. In re Payton*, 73 B.R. 31 (Bankr.W.D.Tex.1987) (untimely objection to exemption overruled and exemption allowed, even though asset might not be exempt under Texas statute.) A recent decision of the Tenth Circuit

seeks turnover of only the $6,238.69 listed on their schedule of exempt property.

**6.** 11 U.S.C. § 522(b) ostensibly allows an individual debtor to choose between state and federal exemption schemes. He may choose the exemptions listed in subsection § 522(d) or he may choose the exemptions to which he is entitled under other federal law or the law of his state of domicile. However, pursuant to the authority of 11 U.S.C. § 522(b)(1), Maine has "opted-out" of the federal exemptions. 14 M.R.S.A. § 4426. Thus, the debtors press their exemption claims under Maine law. They do not assert that the property they seek to obtain from the trustee is exempt under any exemption provision of non-bankruptcy federal law.

**7.** The trustee's response was denominated "Trustee's Response to Debtors 'Motion for Turnover of Exempt Property' and Objection to Purported Claim of Exempt Property." Court Doc. No. 25.

would appear to adopt the "bright line" standard. *In re Brayshaw,* 912 F.2d 1255, 1256 (10th Cir.1990) (district court's order reversing bankruptcy court's order extending time within which to file objections to exemptions "had the effect of granting the debtor's claimed exemptions," and, therefore, was appealable.)

A second line of cases holds that an objection is not necessary if the exemption claimed is invalid under state or federal law. *See e.g. In re Stutterheim,* 109 B.R. 1010 (D.Kan.1989). Such an approach pays lip service to Rule 4003(b), but renders its 30–day limitation period for filing objections toothless.

A third line of cases occupies the middle ground. Under it, a late objection will be considered only to determine whether there exists a good faith statutory basis for the exemption claim. This approach has been employed in the Sixth Circuit, *In re Dembs,* 757 F.2d 777 (6th Cir.1985), and, more recently, in the Eighth Circuit, *In re Peterson,* 920 F.2d 1389 (8th Cir.1990).[8] As well as any approach can, it strikes a balance between accepting "exemption by declaration" and condoning disregard for Bankruptcy Rule 4003(b)'s time limits. As the Eighth Circuit explained:

> To permit a full examination of the merits of a claimed exemption where the trustee has not filed an objection on time would render Rule 4003(b) nugatory. Th[e] bright-line rule, however, should not be applied so as to provide debtors with an undeserved windfall. The unde-

sirable effects of "exemption by declaration" should be avoided.

> The dangers of "exemption by declaration," however, are not significant enough to warrant permitting a trustee another bite at the debtor's apple where the debtor has claimed certain property exempt in good faith.

*In re Peterson, supra,* 920 F.2d at 1393–94. *See In re Bennett,* 36 B.R. 893 (Bankr. W.D.Ky.1984) (articulating dangers of permitting exemption by declaration).

The Eighth Circuit explanation and critique of the approaches that might be followed and its reasons for adopting the "middle ground approach" are persuasive.[9] The debtors' exemption claim will be sustained if there is a "good-faith" statutory basis for it. If the claim is merely uncertain under existing law, it will be upheld in the face of the failure of a trustee or other party-in-interest to file a timely objection as required by the Rule 4003(b). *In re Dembs, supra,* 757 F.2d at 780. Thus, the Kingsburys' claims will be examined to ascertain whether, in light of the substantive content of the statutes upon which they rely, there can be found a good faith basis for their assertion.

### 2. *Applying the Standard: Is There a Good Faith Statutory Basis for the Exemption Claim?*

The Kingsburys were blocked in their pre-petition attempts to obtain the funds withheld from them by Agri–Mark by force of a Massachusetts court order. They claim that the restraining order denied

---

**8.** In *In re Sherk,* 918 F.2d 1170 (5th Cir.1990), the Fifth Circuit, albeit in a different context, endorsed the same rule, as well. It stated:

> We agree with the courts which have held that Section 522(*l*) contains an implicit "additional requirement that there be a statutory basis for the claimed exemption before the failure of any party in interest to timely object to it as any legal effect."

*Id.,* 918 F.2d at 1174, quoting *In re Davis,* 105 B.R. 288, 292 (Bankr.W.D.Pa.1989).

**9.** The Eighth Circuit embraced the rationale articulated in *In re Davis,* 105 B.R. 288 (Bankr.W. D.Pa.1989.) That case collected authorities addressing exemption claims and Rule 4003(b)'s requirement of timely objection. Significant in the *In re Davis* analysis is the court's citation of

the specific language of subsections (b) and (l) of 11 U.S.C. § 522:

> The Court is persuaded by the explicit incorporation by reference in subsection (1) [sic (*l*)] of the provisions of subsection (b), which limits exemptions to:
>
> "... any property that is exempt *under federal law* ... or *state law* or *local law* that is applicable on the date of the filing of the petition."

11 U.S.C. § 522(b) (Emphasis Added.)

> If Debtor may select in any manner her exemptions, then no purpose is served by the inclusion of the emphasized terms. We decline to determine that Congress inserted the terms but refused to grant them meaning.

*Id.,* 105 B.R. at 292–93.

them the funds which, if they had been received, would have constituted cash available for their own use, including "claiming as exempt property pursuant to 14 M.R.S.A. § 4422 to pay creditors of the debtors in the ordinary course of business or used as the debtor's wages, for the purchase of food, clothing and other exempt items." [10] The debtors put forward 14 M.R.S.A. § 4422(1), (3), (7), (15), (16), and 14 M.R.S.A. §§ 3127, 3127–A, 3127–B, and 3128 as statutory bases for their claims.

### a. The Installment Order Statute.

■ Title 14 M.R.S.A. §§ 3127, *et seq.* address the enforcement of judgments. Sections 3127, 3127–A, and 3127–B provide for installment payments to a judgment creditor upon a disclosure hearing. Section 3127–A provides for an order to third parties to hold and answer, and Section 3127–B authorizes issuance of a withholding order to a judgment debtor's employer or payor of earnings. Section 3128 sets forth factors considered in determining the amount of an installment payment order. These sections incorporate the exemptions established in 14 M.R.S.A. §§ 4421–4426.[11] They do not, of themselves, create or enlarge categories of exempt property. In light of their substance, the debtors' reliance on them cannot have a good faith basis.

### b. The Exemption Statute.

The other claimed statutory authorities for exemption are found within the state's primary statutory exemption provision [12] and include the 14 M.R.S.A. § 4422(1)—the homestead exemption; § 4422(3)—clothing, furniture, appliances, and similar items; § 4422(7)—food, produce and animals; § 4422(15)—other property; and § 4422(16)—unused residence exemption. The court can dismiss out of hand subsections (1), (3), (7), and (16). The funds held by Agri–Mark were not part of the debtors' interest in a residence or a burial plot. They cannot be exempted under § 4422(1). Their claim finds no support in § 4422(3), which exempts each debtor's interest, not to exceed $200.00 in value in any particular item, in household furnishings, household goods, wearing apparel, etc. Similarly, § 4422(7) exempts a debtor's interest in the following items: food provisions, seeds, fertilizers, and feed, and tools and equipment reasonably necessary for raising and harvesting food, held primarily for the personal, family, or household use of the debtor or a dependent of the debtor. Again, the exemption claim obviously fails.

■ The debtors assert that, had the funds been available for their use, they would have purchased items qualifying for exemption. However, the statute exempts categories of items, some of which must be held for qualifying purposes, *e.g.* personal, family or household use or use in the debtor's trade. *See* 14 M.R.S.A. §§ 4422(4), 4422(5). Nowhere does the statute provide for exemption of funds with which a debtor might choose to acquire exempt property. To the contrary, Maine law substantially negates exemption claims based on "eve of bankruptcy" acquisition of exempt assets.[13]

---

**10.** Debtors' Reply Memorandum to Trustee's Response to Debtors' Motion for Turnover of Exempt Property, Court Doc. No. 30., at p. 8. Notwithstanding the patent inconsistency in claiming property as "exempt" and asserting it would have been used "to pay creditors in the ordinary course of business," the proffered statutory justifications for the exemption claims will be examined in detail.

**11.** 14 M.R.S.A. § 3127 provides, in pertinent part:
    1. Court Order. Upon a disclosure hearing when it is shown that the judgment debtor is receiving or will receive money or earnings from a source other than a source which is otherwise exempt from attachment and execution under sections 4421 to 4426, the court may order that the judgment debtor make specified installment payments to the judgment creditor....
The section goes on to limit the amount of weekly earnings that may be subjected to an installment order.

**12.** 14 M.R.S.A. § 4422 sets forth detailed categories of state law exemptions available to Maine debtors in bankruptcy.

**13.** The statute limits acquisition, improvement or enhancement of the value of exempt assets through transfers of non-exempt assets within ninety days of bankruptcy "to the extent that the acquisition, improvement or increase in value exceeds the reasonable needs of the debtor or his dependents." 14 M.R.S.A. § 4423.

■ The Kingsburys' argument that the money is exempt because it represents the "proceeds" of exempt property under § 4422(7) falls short, as well. Even if the "milk earnings" were considered "proceeds," rather than "products" of animals or food,[14] they would be proceeds from business sales of milk,[15] rather than from sale of food, produce or animals previously held for "personal, family or household use" as subsection (7) requires.

■ The debtors also proffer § 4422(16) as a statutory basis for their claim. That section permits each debtor to exempt his interest, equal to any unused amount of the homestead exemption but not exceeding $4,500.00, in any property otherwise exempt under § 4422(3)—clothing, furniture, appliances, and similar items; § 4422(5)—tools of the trade; and § 4422(14)(D)—certain legal awards on account of personal bodily injury. Having claimed no exemption for an interest in a residence, the Kingsburys suggest that they may apply an exemption up to $4,500.00 apiece against the money the trustee holds. Although § 4422(16) may expand exemptions for some items beyond the value limits imposed by the subsections in which they are found, the Agri–Mark fund is not exempt under subsections (3), (5) and (14)(D) and, thus, the unused residence "pour-over" exemption has no basis upon which to operate.

■ The only other exemption provision cited by the debtors is 14 M.R.S.A. § 4422(15)—other property. This so-called "wild card" provision exempts each debtor's aggregate interest, not to exceed $400.00 in value, in any property whatsoever. However, the debtors played their wild card when they designated as exempt other "milk earnings" held by a third party. The law does not provide the Kingsburys the opportunity to play the card a second time.

## CONCLUSION

For the foregoing reasons, the court finds the claimed exemption of milk "earnings" held by Agri–Mark in the amount of $6,238.69 to be without a good-faith statutory basis; thus, the trustee's failure to object to the claimed exemption within the 30 day period prescribed by Bankruptcy Rule 4003(b) is not fatal to the estate's claim to the funds. A separate order denying the motion seeking turnover of exempt property will be entered at once.

---

14. Maine's version of Article 9 of the Uniform Commercial Code, enacted at 11 M.R.S.A. § 9–101 *et seq.*, provides guidance. It appears clear that milk is a "farm product," 11 M.R.S.A. § 9–109(3), rather than "proceeds" of livestock, 11 M.R.S.A. § 9–306(1). Thus, the funds held by Agri–Mark are fairly characterized as the proceeds of sales of farm products.

15. The debtors filed their Statement of Affairs for Debtor Engaged in Business indicating that, until June 28, 1989 they were dairy farmers. Their Schedule B–2 describes the money held by Agri–Mark as "resulting from" a sale of milk to it.